# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
June 18, 2025 Session

## ESSIE JAMES AND WILLIAM JAMES v. PETRA FINANCE, LLC, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-15-0269-1  Melanie Taylor Jefferson, Chancellor**

_____

### No. W2024-00795-COA-R3-CV
_____

This case involves a petition for rescission of a mortgage loan based on fraud in the inducement. The trial court granted summary judgment to the defendants on two separate grounds. The first basis for the trial court's grant of summary judgment was that the plaintiff sought rescission of the loan transaction but admitted that he could not repay the amount he received in the transaction and also admitted that he could not restore the status quo if the note and deed of trust were rescinded. Because the plaintiff was unable to place the parties in their prior status, the trial court found that he was not entitled to rescission. Next, the trial court found that the plaintiff failed to identify any misrepresentation made by the original lender and only alleged misrepresentation by the mortgage broker, who was not a party to this lawsuit. The trial court found that the plaintiff failed to present any evidence or legal theory showing that the mortgage broker was acting as an agent of the original lender, so his statements were not attributable to the defendants. The plaintiff appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and KRISTI M. DAVIS, J., joined.

Webb A. Brewer, Memphis, Tennessee, for the appellant, William Z. James.

Bret J. Chaness and Patricia Whitehead, Peachtree Corners, Georgia, for the appellees, Petra Finance, LLC, and Clear Springs Loan Services, Inc.

# MEMORANDUM OPINION[1]

## I. FACTS & PROCEDURAL HISTORY

This case arises out of the purchase of a home in 2005, and the litigation has now been pending for over a decade. We will only recount the procedural history of the litigation to the extent that it is relevant to the issues on appeal.

William James instituted this lawsuit in 2015 by filing a petition to enjoin a foreclosure sale, for rescission of his mortgage loans, and for damages. Pertinent to this appeal, the complaint alleged that Mr. James was fraudulently induced to enter into the loan documents for his first and second mortgage in 2005 based on misrepresentation by his mortgage broker. Specifically, Mr. James alleged that the original lender had paid the mortgage broker a "Yield Spread Premium" of $2,049.75 for arranging the loans. The complaint alleged that a "yield spread premium" is essentially a "kickback" paid by a lender to a mortgage broker for arranging a loan that is more profitable to the lender than one for which the borrower was qualified, generally with a higher interest rate and/or excessive fees. The complaint alleged that this was fraudulent and sought "rescission and restitution based on fraud in the inducement of a loan transaction." The complaint noted that the servicing of the loans was transferred to other entities after closing. It also noted that Mr. James had subsequently entered into a loan modification agreement. According to the complaint, the servicing of the mortgage "changed hands several times," and by the time of the litigation, it was being serviced by Clear Springs Loan Services, Inc. The complaint stated that Mr. James had received a notice of foreclosure sale indicating that Petra Finance, LLC, currently owned the beneficial interest of the deed of trust associated with the first mortgage loan. Thus, the complaint named as defendants Petra Finance and Clear Springs. However, neither the original lender nor the mortgage broker was named as a defendant. According to Mr. James, the original lender and mortgage broker "are now defunct."

The trial court entered a restraining order prohibiting the foreclosure, and litigation ensued over the next several years. Petra Finance and Clear Springs unsuccessfully moved for summary judgment, but in 2023, they filed a renewed motion for summary judgment on multiple grounds. Initially, the defendants noted that Mr. James had failed to respond to their requests for admissions served upon counsel in 2017 and 2018, and therefore, the matters contained therein should be deemed conclusively established.

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

As grounds for summary judgment, the defendants pointed out that Mr. James sought rescission of the loan agreement but admitted that he did not have the ability to immediately repay the amount of the loan he received, $136,650. Mr. James also admitted that he could not restore the status quo if the note and deed of trust were rescinded. The defendants noted that rescission of a contract is meant to restore the parties to their former positions and argued that there is no ground for rescission under Tennessee law if the parties cannot be returned to the status quo due to the passage of time or other reasons.

As an additional or alternative ground for summary judgment, the defendants argued that neither of them was alleged to have made any representations to Mr. James, as he only alleged misrepresentation by the mortgage broker. They argued that Mr. James had failed to present any evidence to show that the mortgage broker was acting as an agent for the original lender or as an agent of the defendants. To the contrary, the defendants argued that the mortgage broker hired by Mr. James was acting as his own agent in the transaction. Therefore, they claimed that any misrepresentation made by the mortgage broker was not attributable to Petra Finance or Clear Springs. Based on these and other additional grounds, the defendants argued that there were no genuine issues of material fact and that they were entitled to summary judgment.

Mr. James filed a response to the summary judgment motion. At the outset, he conceded that the trial court had already deemed five of the defendants' requests for admissions to be admitted, which included the following matters pertinent to the issues on appeal:

Admit that you received $136,650.00 when you signed the Promissory Note.

Admit that you do not have the ability to immediately repay $136,650.00 to Petra.

Admit that you do not have the ability to restore the status quo if the Promissory Note and the First Deed of Trust were rescinded.

Still, Mr. James argued that the defendants were not entitled to summary judgment "even with these matters deemed as admitted." Even though Mr. James admittedly received $136,650 when he signed the promissory note, he stated that there was no proof in the record to show the amount Petra Finance paid to acquire the note and deed of trust to the property. Mr. James suggested that if the court ordered rescission of the loan transaction, then he should only be required to tender to Petra Finance the amount it paid to acquire the loan, "which is yet to be determined." He argued that, "ultimately, the Court will be required to determine what would be required to restore Petra to the status quo."

As for the agency issue, Mr. James argued that the mortgage broker had an agency

relationship with the original lender. Specifically, Mr. James argued that the record contained proof that the mortgage broker was acting as an agent for the lender because the settlement statement showed that the lender paid the broker a yield spread premium, and the mortgage broker testified during his deposition that he had contractual relationships with the lenders, which set out the parameters under which he could originate loans. Mr. James argued that the current defendants were assignees of the original lender and servicer of the loan, and therefore, any rights they had to collect payments or foreclose would emanate from the original documents and be subject to the same defenses. Thus, Mr. James asserted that the defendants were "subject to" his claim for fraud in the inducement of the original loan, and their rights "would depend on the ultimate resolution of [his] claim for rescission."

In 2024, the trial court entered a final order granting summary judgment to Petra Finance and Clear Springs on the claim for rescission based on fraudulent inducement. First, the trial court found that Mr. James was asking for rescission of the note in this action, but he admitted that he did not have the ability to immediately repay $136,650 to Petra and that he "could not restore the status quo" if the note and deed of trust were rescinded. The trial court concluded that there is no ground for rescission under Tennessee law if the parties cannot be returned to the status quo. Because Mr. James admittedly did not have the ability to place the parties in their prior status, the court found he was not entitled to rescission.

Next, the trial court found that Mr. James failed to identify a single representation made to him by the original lender, and the only actor who allegedly made misrepresentations to him was the mortgage broker. The trial court found that Mr. James failed to present "any evidence or legal theory" showing that the mortgage broker was acting as an agent for the lender. Accordingly, the court found that any misrepresentation by the mortgage broker was not attributable to Petra Finance or Clear Springs. For these reasons, the trial court granted the defendants' motion for summary judgment. Mr. James timely filed a notice of appeal.

## II.   ISSUES PRESENTED

Mr. James presents the following issues for review on appeal:

1. Whether the trial court erred in denying the Plaintiff's claim for rescission of a mortgage loan agreement for fraud in the inducement of the agreement based upon the plaintiff's mortgage broker's acceptance of compensation from the lender to induce him to accept loan terms less favorable than terms for which he was qualified.

2. Whether the trial court erred in finding that rescission was not an appropriate remedy because the plaintiff could not repay the original loan

- 4 -

amount as restitution prior to a finding of liability or determination of the proper amount necessary to make restitution.

For the following reasons, the decision of the chancery court is hereby affirmed.

## III. DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo with no presumption of correctness. *Case v. Wilmington Tr., N.A.*, 703 S.W.3d 274, 281 (Tenn. 2024).

We will address Mr. James's last issue first, regarding rescission. A contract may be rescinded for fraud. *Case Handyman Serv. of Tenn., LLC v. Lee*, No. M2011-00751-COA-R3-CV, 2012 WL 2150857, at *7 (Tenn. Ct. App. June 13, 2012) (quoting *Douglas v. Foster*, 2002 WL 83605, at *1 (Tenn. Ct. App. Jan. 22, 2002)). However, rescission "is not looked upon lightly and will be awarded only under the most demanding circumstances." *Id.* (quoting *Douglas*, 2002 WL 83605, at *1). "[R]escission is not favored in Tennessee[.]" *Pugh's Lawn Landscape Co. v. Jaycon Dev. Corp.*, 320 S.W.3d 252, 261 (Tenn. 2010) (citing *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 631 (Tenn. Ct. App. 2002)). It "involves the avoidance, or setting aside, of a transaction. Usually it involves a refund of the purchase price or otherwise placing the parties in their prior status." *Mills v. Brown*, 568 S.W.2d 100, 102 (Tenn. 1978).

Here, it is undisputed, based on the admissions of Mr. James in the trial court, that he received $136,650 when he signed the promissory note, that he did not have the ability to immediately repay $136,650 to Petra, and that he did not "have the ability to restore the status quo if the Promissory Note and the First Deed of Trust were rescinded." Because Mr. James admittedly did not have the ability to place the parties in their prior status, the trial court found that he was not entitled to rescission. We agree. "It is well settled in this jurisdiction that a contract cannot be rescinded without restoring the 'status quo.'" *Loveday v. Cate*, 854 S.W.2d 877, 881 (Tenn. Ct. App. 1992); *see Lindsey-Davis Co. v. Siskin*, 358 S.W.2d 331, 333 (Tenn. 1962) (noting counsel's admission that "it is a fundamental rule in equity a contract will not be rescinded if the parties cannot be placed in status quo"); *Leake v. Gray, Shillinglaw & Co.*, 226 S.W.2d 298, 305 (Tenn. 1949) ("if the parties cannot be put back in status quo or equity cannot be done due to the passage of time, etc., then clearly there is no ground for a rescission"); *Brady v. Oliver*, 147 S.W. 1135, 1141 (Tenn. 1911) ("As a general proposition, neither party to a contract can rescind without restoring the status quo."); *A. Landreth Co. v. Schevenel*, 52 S.W. 148, 149 (Tenn. 1899) ("It is an elemental principle, as applicable to rescission of contracts or settlements by fraud or otherwise, that upon rescission the parties must be put in statu[s] quo[.]").

Simply put, "Tennessee law provides that rescission is not available if the parties cannot be placed in status quo." *Klosterman*, 102 S.W.3d at 635. The trial court correctly noted that "[i]f the parties cannot be put in status quo, or if, due to the passage of time or other reasons, equity cannot be done, there is no ground for rescission." *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993). For instance, in *Cato v. Batts*, No. M2009-02204-COA-R3-CV, 2011 WL 579153, at *9 (Tenn. Ct. App. Feb. 17, 2011), we observed that rescission was not an appropriate remedy where "[f]our years ha[d] passed since the sale of the home when this case went to trial and it has not been established that the parties could be returned to the status quo that existed when the Catos purchased the property[.]" Thus, "rescission of a contract should be denied if the parties cannot be placed as nearly as possible in the respective positions they were in prior to entering into the contract." *Song v. Chung*, No. E2018-00114-COA-R3-CV, 2018 WL 5618114, at *11 (Tenn. Ct. App. Oct. 30, 2018).

The issue raised by Mr. James on appeal is whether the trial court erred in determining that rescission was not an appropriate remedy "prior to a finding of liability or determination of the proper amount necessary to make restitution." He first suggests that the trial court should not have determined whether rescission was appropriate "at the summary judgment stage without a full consideration of all the facts and circumstances of the case." Mr. James contends that rescission is a remedy "particularly unsuited for resolution at summary judgment." However, summary judgments "are proper in virtually any civil case that can be resolved on legal issues alone." *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009). In *Green*, our supreme court reviewed whether summary judgment was properly granted on a claim for rescission of a contract under the Tennessee Securities Act. *Id.* at 496-97. *See also Hidden Lake Resorts Homeowners Ass'n, Inc. v. Moore*, No. M2022-01323-COA-R3-CV, 2024 WL 2844447, at *11 (Tenn. Ct. App. June 5, 2024) (affirming summary judgment on a rescission claim); *Gibbs v. Gilleland*, No. M2015-00911-COA-R3-CV, 2016 WL 792418, at *9-10 (Tenn. Ct. App. Feb. 29, 2016) (resolving cross-motions for summary judgment on a claim for rescission). Mr. James suggests that it is difficult "to pass judgment on the appropriateness of the remedy of rescission at the summary judgment stage." However, summary judgment was clearly appropriate here based on the undisputed fact that Mr. James did not "have the ability to restore the status quo if the Promissory Note and the First Deed of Trust were rescinded."

Mr. James also contends that the trial court erred in finding that rescission was not an appropriate remedy prior to determining "the proper amount necessary to make restitution." Mr. James admitted that he received $136,650 when he signed the promissory note and that he did not have the ability to repay that amount to Petra. He speculates in his brief, without any proof in the record, that Petra Finance may have purchased the loan for a substantially less amount. Before the trial court, he similarly argued in response to the summary judgment motion that "ultimately, the Court will be required to determine what would be required to restore Petra to the status quo." However, because of his admission

that he did not "have the ability to restore the status quo if the Promissory Note and the First Deed of Trust were rescinded," it is not necessary to ascertain the amount paid by Petra or the "proper amount necessary to make restitution." "[A] contract will not be rescinded if the parties cannot be placed in status quo." *Ingram v. Beazer Homes Corp.*, No. M2001-01641-COA-R3-CV, 2003 WL 1487251, at *6 (Tenn. Ct. App. Mar. 25, 2003) (quotation omitted).

We also find no support for Mr. James's suggestion that the trial court was required to first address "liability" for fraud prior to deciding whether rescission was appropriate. "While a plaintiff must prove the elements of one of the grounds justifying rescission in order to be eligible for that remedy, such proof does not require the trial court to automatically grant it." *Stonecipher v. Est. of Gray*, No. M1998-00980-COA-R3-CV, 2001 WL 468673, at *4 (Tenn. Ct. App. May 4, 2001); *see, e.g.*, *Noble v. Pease*, No. W2004-00439-COA-R3-CV, 2005 WL 1707969, at *5 (Tenn. Ct. App. July 22, 2005) (recognizing that a breach of contract did occur but explaining that "[r]egardless, however, of the gravity of the wrong committed . . . if 'the parties cannot be put in status quo, or if, due to the passage of time or other reasons, equity cannot be done, there is no ground for rescission,'" and "[i]n this case, due to the passage of time and the difficulty of unwinding the transaction, it appears that rescission is not the appropriate remedy") (quoting *Lamons*, 909 S.W.2d at 801). In any event, however, the trial court did address liability by finding no fraud attributable to the defendants. All other issues raised by the appellant are pretermitted.

## IV. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed and remanded. Costs of this appeal are taxed to the appellant, William Z. James, for which execution may issue if necessary.

s/ Carma Dennis McGee
CARMA DENNIS MCGEE, JUDGE